IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>and<br><br>COMMONWEALTH OF MASSACHUSETTS,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>CITY OF HOLYOKE, MASSACHUSETTS,<br><br>Defendant. | CIVIL ACTION NO. 19-10332 |

## **COMPLAINT OF THE UNITED STATES OF AMERICA**

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

## **NATURE OF ACTION**

1. This is a civil action brought against the City of Holyoke, Massachusetts ("Holyoke" or the "City") under Section 309(b) of the Federal Water Pollution Control Act of 1972, as amended (commonly referred to as the "Clean Water Act" and hereinafter referred to as "CWA"), 33 U.S.C. § 1319(b), seeking injunctive relief for the City's failure to comply fully with the CWA in its discharge of pollutants from its wastewater collection system both without

1

authorization of, and in noncompliance with, its National Pollutant Discharge Elimination System ("NPDES") permit, in violation of the CWA.

## JURISDICTION, VENUE AND NOTICE

2. This Court has jurisdiction over the subject matter of this action under Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3. Venue is proper in this district under Section 309(b) of the CWA, 33 U.S.C. § 1319(b), 28 U.S.C. § 1391(b) and (c), and 28 U.S.C. § 1395.

4. Notice of the commencement of this action has been given to the Commonwealth of Massachusetts pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANT

5. Defendant Holyoke is a municipality incorporated under the laws of the Commonwealth of Massachusetts, with a mailing address at 536 Dwight St, Holyoke, Massachusetts, 01040.

6. Holyoke is a "municipality" within the meaning of Section 502(4) of the CWA, 33 U.S.C. § 1362(4), and a "person" within the meaning of Section 502(5) of the CWA, 33 U.S.C. § 1362(5).

## INTERVENING PLAINTIFF

7. Section 309(e) of the CWA, 33 U.S.C. § 1319(e), provides:

> Whenever a municipality is a party to a civil action brought by the United States under this section, the State in which such municipality is located shall be joined as a party. Such State shall be liable for payment of any judgment, or any expenses incurred as a result of complying with any judgment, entered against the municipality in such action to the extent that the laws of that State prevent the municipality from raising revenues needed to comply with such judgment.

8. The Commonwealth of Massachusetts has committed to join this action pursuant to Section 309(e) of the CWA, 33 U.S.C. § 1319(e), as an intervening plaintiff. The United States reserves all claims that it may have against the Commonwealth of Massachusetts under Section 309(e).

## STATUTORY BACKGROUND

9. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants to navigable waters of the United States except in compliance with the terms and conditions of a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

10. Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of pollutants" to include "any addition of any pollutant to navigable waters from any point source."

11. Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines the term "pollutant" to include, *inter alia*, "sewage . . . , biological materials . . . , and . . . municipal . . . waste discharged into water."

12. Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States, including the territorial seas."

13.　　In turn, "waters of the United States" has been defined to include, in relevant part, "[a]ll waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide," and tributaries to such waters. 40 C.F.R. §122.2 (1993 & 2015).

14.　　Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit . . . from which pollutants are or may be discharged."

15.　　Section 402 of the CWA, 33 U.S.C. § 1342, provides that the Administrator of EPA may issue permits under the NPDES program for the discharge of pollutants into navigable waters upon such specific terms and conditions as the Administrator of EPA may prescribe.

16.　　Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates Section 301(a) of the CWA, 33 U.S.C. § 1311(a), or a permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.　　Under the Massachusetts Surface Water Quality Standards, set forth at 314 Code of Massachusetts Regulations ("C.M.R.") Section 4.00, the Connecticut River is listed as a Class B water.  Prior to January 2007, specific bacterial criteria for Class B waters included a fecal coliform limit of "a geometric mean of <200 organism/100 mL in representative set of samples and < 10% of the samples > 400 organism / 100mL."   After January 2007, the fecal coliform limit for Class B water bacteria was replaced with an *E.coli* standard, and, for Class B waters, includes an *E.coli* limit, for bathing beaches, of the geometric mean of the five most recent

samples taken during the same bathing season which shall not exceed 126 colonies per 100 ml and no single sample taken during the bathing season shall exceed 235 colonies per 100 ml; and for other waters and, during the non-bathing season, of geometric mean of all *E.coli* samples taken within the most recent six months which shall not exceed 126 colonies per 100 ml typically based on a minimum of five samples and no single sample shall exceed 235 colonies per 100 ml." 314 C.M.R. Section 4.05(3)(b)(4)(a)-(b).

### GENERAL ALLEGATIONS

18.  Holyoke is the owner and operator of a 17.5 million gallon per day ("mgd") wastewater treatment facility ("WWTF") (also known as the Holyoke Wastewater Pollution Control Facility) which treats domestic, commercial and industrial wastewater and stormwater, and discharges treated effluent through Outfall 001 to the Connecticut River.

19.  The City also owns and operates a sewer collection system ("Collection System"). Approximately 66% of Holyoke's Collection System is a combined sewer system ("CSS"), transporting both sewage and storm water, which primarily serves the older, densely populated central section of Holyoke.

20.  The Collection System currently includes eleven combined sewer ("CSO") outfalls that discharge directly, or indirectly via a canal, into the Connecticut River.

### CSO Discharges

21.  During rain events, rainwater often overwhelms the capacity of the CSS, resulting in excess storm- and wastewater being diverted to the City's CSO outfalls, and thereafter, into the Connecticut River.

22.        Holyoke's CSO outfalls are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

23.        Discharges from Holyoke's CSO outfalls include, among other things, "sewage," "biological materials," and "municipal waste," all "pollutants" under Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

24.        Discharges from Holyoke's CSO outfalls enter, directly or indirectly via a canal, the Connecticut River, and thereafter the Long Island Sound and the Atlantic Ocean, which are all "navigable waters" and "waters of the United States" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

25.        Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, EPA issued Permit No. MA0101630 to Holyoke on September 1, 2009 (the "2009 Permit"). The 2009 Permit expired on August 31, 2014. In accordance with 40 C.F.R. § 122.6, the City continues to discharge under the terms of the 2009 Permit.

26.        The 2009 Permit authorizes, subject to specific limitations and conditions, the discharge of treated effluent from the WWTF through Outfall 001, and combined storm- and wastewater from thirteen CSO outfalls. Since issuance of the 2009 Permit, the City has eliminated two CSO outfalls.

27.        Part I.A.1.a. of the 2009 Permit requires that the CSO discharges "not cause a violation of the water quality standards of the receiving waters," and Part I.A.4. requires that "[t]he permittee shall not discharge any pollutant or combination of pollutants in toxic amounts," or in amounts that "result in any demonstrable harm to aquatic life or violate any state or federal

6

water quality standard which has been or may be promulgated." Part I.B.2.b. of the 2009 Permit also requires that, "[t]he discharge shall not cause **or contribute to** violations of federal or state water quality standards" (emphasis in original).

28. Part I.B.2.a. of the 2009 Permit requires that, "[t]he discharges shall receive treatment at a level providing Best Practicable Control Technology Currently Available ("BPT"), Best Conventional Pollutant Control Technology ("BCT") to control and abate conventional pollutants, and Best Available Technology Economically Achievable ("BAT") to control and abate non-conventional pollutants." Part I.B.2.a further mandates that BPT, BCT, and BAT for the City's CSO outfalls "include the implementation of the Nine Minimum Controls" ("NMCs") listed in Part I.B.2.a.(1)-(9). One of the listed NMCs is a "[p]rohibition of dry weather overflows from CSO outfalls." Part I.B.2.a.(5) of the 2009 Permit. Thus the City is only permitted to discharge effluent from its CSO outfalls during wet weather.

### Unauthorized Discharges

29. Holyoke also periodically discharges sewage and other pollutants to the Connecticut River through other, non-CSO components of the Collection System, such as manholes that flow to storm drains ("Unauthorized Discharges"). These Unauthorized Discharges are not permitted by the 2009 Permit or any other permit.

30. The various components of the Collection System from which these such Unauthorized Discharges occur, such as storm drains, are "point sources" within the meaning of Section 502(14) of the CWA, 33 U.S.C. § 1362(14).

31.     Holyoke's Unauthorized Discharges include, among other things, "sewage," "biological material," and "municipal waste," all "pollutants" under Section 502(6) of the CWA, 33 U.S.C. § 1362(6).

32.     Holyoke's Unauthorized Discharges enter the Connecticut River, which is a "navigable water" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

## FIRST CLAIM FOR RELIEF
### (CSO Discharges)

33.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 32 above.

34.     In annual reports submitted to EPA, Holyoke has reported numerous untreated discharges from its permitted CSO outfalls. In its 2015 CSO Annual Report, the City reported its CSO outfalls discharged approximately 380 times in 2015, with an annual discharge volume of approximately 133 million gallons of untreated effluent to the Holyoke canal system and Connecticut River.

35.     Part I.B.2. of the 2009 Permit authorizes sanitary and storm water to be discharged from Holyoke's CSO outfalls to the Connecticut River provided that such discharges receive treatment at a level providing BPT, BCT, and BAT to control and abate conventional and nonconventional pollutants through implementation of NMCs, including a prohibition against dry weather discharges, and provided that the discharges "not cause or contribute to violations of federal or state water quality standards."

36.     Holyoke's CSO discharges cause or contribute to water quality violations in the Connecticut River as such discharges contain fecal coliform or *E.Coli* in excess of the amounts

allowed under the Massachusetts Surface Water Quality Standards for Class B waters. 314 C.M.R. Section 4.05(3)(b)(4).

37.     Holyoke's CSO discharges containing pollutants that cause or contribute to water quality violations in the Connecticut River are violations of the 2009 Permit and the CWA.

38.     Upon information and belief, Holyoke will continue to discharge pollutants from its CSO outfalls in violation of the Massachusetts Surface Water Quality Standards and the 2009 Permit unless restrained by this court.

39.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Holyoke is subject to injunctive relief to prevent future violations of the CWA.

40.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701).

## SECOND CLAIM FOR RELIEF
### (Dry Weather Discharges)

41.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 40 above.

42.     Part I.B.2 of the 2009 Permit requires the City to implement NMCs, including a categorical "prohibition of dry weather overflows from CSO outfalls." Part I.B.2.5. of the 2009 Permit.

43.     Holyoke reported dry weather overflows in its 2014 and 2015 CSO Reports and, during a 2012 inspection, EPA identified 40 potential dry weather overflows.

44.     Upon information and belief, Holyoke will continue to discharge untreated effluent during dry weather from its CSO outfalls in violation of its 2009 Permit and the CWA unless restrained by this Court.

45.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Holyoke is subject to injunctive relief to prevent future violations of the CWA.

46.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. This civil penalty level has been adjusted upward over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996), and to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701).

### THIRD CLAIM FOR RELIEF
**(Unauthorized Discharges)**

47.     The United States realleges and incorporates by reference the allegations of paragraphs 1 through 46 above.

48.     Between November 25, 2011 and June 8, 2016, Holyoke reported the occurrence of 48 Unauthorized Discharges from various components of the Collection System, such as manholes to storm drains. The City's self-reported discharges during this time period include a combined estimated volume of 85,272 gallons of untreated effluent containing pollutants, including sewage, discharged directly or indirectly to the Connecticut River.

49.     The 2009 NPDES Permit only authorizes the discharge of wastewaters through the WWTF at Outfall 001, and thirteen permitted CSO outfalls; discharges from other components of the Collection System are therefore not authorized under the 2009 Permit, nor does any other permit authorize such discharges.

50.     Holyoke's Unauthorized Discharges from various unpermitted components of the Collection System to the Connecticut River are violations of Section 301(a) of the CWA, 33 U.S.C. §1311(a).

51.     Upon information and belief, Holyoke will continue to have Unauthorized Discharges from various components the Collection System to the Connecticut River unless restrained by this court.

52.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Holyoke is subject to injunctive relief to prevent future violations of the CWA.

53.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or any condition or limitation of a permit issued under Section 402 of the CWA, 33 U.S.C. §1342, shall be subject to a civil penalty not to exceed $25,000 per day for each violation. This civil penalty level has been adjusted upward

over time at 40 C.F.R. § 19.4 as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996), and the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L.114-74, Section 701).

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests that the Court grant the following relief:

1. Permanently enjoin the City, pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), from any and all future violations of the CWA and from discharges of pollutants except as authorized by a NPDES permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342;

2. Pursuant to Section 309(d) of the CWA and C.F.R. § 19.4, assess civil penalties against Defendant in amounts up to the level set forth at 40 C.F.R. § 19.4 per day for each violation;

3. Award the United States its costs in this action; and

4. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney
District of Massachusetts

Dated:  February 21, 2019

/s/*Brian M. LaMacchia*
BRIAN M. LaMACCHIA (BBO No. 664369)
Assistant U.S. Attorney
John Joseph Moakley Courthouse
One Courthouse Way
Suite 9200
Boston, Massachusetts 02210
(617) 748-3126
brian.lamacchia@usdoj.gov


BRIAN G. DONOHUE
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611 – Ben Franklin Station
Washington, DC  20044
(202) 514-5413
brian.donohue@usdoj.gov


OF COUNSEL:

Tonia Bandrowicz
Senior Enforcement Counsel
U.S. Environmental Protection Agency, Region 1